# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,  )
                                   )
             **Plaintiff,**          )
                                   )
**v.**                                  )       **Case No. 12-CR-0015-CVE**
                                   )              **(13-CV-0592-CVE-TLW)**
SHANNON LASHEA PORTER,   )
                                   )
            **Defendant.**       )

## OPINION AND ORDER

Now before the Court is the government's Motion to Enforce Collateral Attack Waiver (Dkt. # 46). The government argues that defendant entered a plea agreement with an appellate and post-conviction waiver, and all of the claims raised in her motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (Dkt. # 40) fall within the scope of her post-conviction waiver.[1] Defendant has not responded to the government's motion. Defendant has also filed a motion for modification of sentence under 18 U.S.C. § 3582(c) (Dkt. # 43).

## I.

On January 27, 2012, the United States Attorney for the Northern District of Oklahoma filed an information (Dkt. # 2) alleging that defendant Shannon Lashea Porter filed false tax returns on behalf of other persons using identification information that she unlawfully possessed. Defendant was charged with 20 counts of filing a false claim with the Internal Revenue Service (IRS) in violation of 18 U.S.C. § 287 and 20 counts of aggravated identity theft in violation of 18 U.S.C. § 1028A. The grand jury subsequently returned an indictment (Dkt. # 5) charging defendant with 18

---

[1]      The government also requests an extension of time to respond to defendant's § 2255 motion if the motion to enforce the post-conviction waiver is denied. Dkt. # 47.

counts of filing false tax returns, 16 counts of aggravated identity theft, and one count of making a false statement to the Social Security Administration in violation of 18 U.S.C. § 1001. The government filed an amended information (Dkt. # 14) alleging 20 counts of filing a false tax claim, 18 counts of aggravated identity theft, and one count of making a false statement to the Social Security Administration. Defendant waived her right to indictment (Dkt. # 21) as to the charges alleged in the amended information, and she pled guilty to count 19 of the amended information. In count 19 of the amended information, defendant was charged with submitting a false claim for refund to the IRS, and she faced a maximum sentence of imprisonment of five years.

The change of plea hearing took place on May 30, 2012, and defendant was represented by Robert Wyatt at the hearing. At the beginning of the change of plea hearing, the Court inquired whether there would be an issue as to defendant's competence to proceed, because defendant allegedly had an IQ of 45 and low cognitive function. Dkt. # 29, at 5. Wyatt stated that he had met with defendant extensively, and she understood the crimes charged against her and there was no issue as to her competence. Id. Counsel for the government explained that the plea agreement represented the best offer made to defendant, and the plea agreement did not include a stipulation as to the amount of the loss because the parties were unable to reach an agreement. Id. at 6-7. The government described the key terms of the plea agreement and noted that the plea agreement contained a waiver of appellate and post-conviction rights. Id. at 7. The Court asked defendant questions to determine if her medications for depression and anxiety impaired her ability to understand the proceedings, and defendant stated that the medications made her tired but she understood the purpose of the hearing. Id. at 10-12. The Court advised defendant of the maximum punishment she could face based on a guilty plea to count 19 of the amended information, and

defendant acknowledged that she understood that she could be sentenced to up to five years imprisonment. Id. at 16. The Court asked defendant if she understood that she would be required to pay restitution for the full amount of the loss caused by her conduct, regardless of her ability to pay, and defendant stated that she understood that restitution would be imposed. Id. at 19-20.

The Court asked defendant if she was aware that the plea agreement contained a waiver of appellate and post-conviction rights, and defendant stated that she knew she was waiving or giving up some of her appellate and post-conviction rights. The Court advised defendant that it was obligated to fully review the appellate and post-conviction waiver with defendant on the record:

> THE COURT: . . . Do you understand that in consideration of the promises and concessions made by the United States in your written plea agreement, you are knowingly and voluntarily agreeing to waive the right to directly appeal your conviction and sentence pursuant to 28, U.S.C., Section 1291, and/or 18, U.S.C., 3742(a), except that you reserve the right to appeal from a sentence which exceeds the statutory maximum?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Do you understand that you are expressly acknowledging and agreeing that the United States reserves all rights to appeal your sentence as set forth in 18, U.S.C., 3742(b), and the case of United States v. Booker?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Do you understand that you are knowingly and voluntarily agreeing to waive the right to collaterally attack your conviction and sentence pursuant to 28, U.S.C., 2255, except for claims based on ineffective assistance of counsel which challenge the validity of your guilty plea or your waiver of appellate and post-conviction rights contained in your written plea agreement?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Do you understand that you are knowingly and voluntarily agreeing to waive the right to have your sentence modified pursuant to 18, U.S.C., Section 3582(c), except for a Rule 35(b) motion filed by the government?
>
> THE DEFENDANT: Yes, ma'am.

> THE COURT: Do you understand that you are knowingly and voluntarily agreeing to waive the right to appeal my determination of the amount of restitution and my restitution order?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Do you understand that you are expressly acknowledging that Mr. Wyatt has explained your appellate and post-conviction rights, that you understand those rights, and that you are knowingly and voluntarily waiving those rights as set forth in the written plea agreement?
>
> THE DEFENDANT: Yes, ma'am.

Id. at 23-24.  The Court explained to defendant what constitutional rights she would be waiving by entering a guilty plea, and defendant affirmed that she wished to proceed with the change of plea.

Id. at 25-30.  The Court read count 19 of the amended information to defendant, and she admitted to the essential elements of the offense.  Id. at 31-33.  Wyatt also advised the Court that he had explained possible sentencing enhancements to defendant, as well as "those appellate rights and what she is giving up, and I explained to her what a habeas corpus is, what collateral review is . . . ." Id. at 36.  He also "want[ed] the court to know I went over all of that in great detail on more than one occasion but specifically on Friday and last night for two hours." Id.  Defendant confirmed that the meetings described by Wyatt took place.  Id.  The Court accepted defendant's guilty plea and set the sentencing hearing for September 12, 2012.

A presentence investigation report (PSR) was prepared.  Defendant had a total of 29 criminal history points and she fell within Criminal History Category VI.  Defendant's adjusted offense level, after subtracting three points for acceptance of responsibility, was 15, and her advisory guideline range was 41 to 51 months imprisonment.  The PSR described defendant's personal and family history in detail, and defendant's mental health history of mild to moderate retardation and low IQ were included in the PSR.  Before the sentencing hearing, Wyatt filed a motion for variance or

departure on defendant's behalf, and he argued that defendant should receive a reduced sentence due to her diminished mental capacity. Dkt. # 31, at 10. Wyatt also asked the Court to consider defendant's incarceration up to the date of sentencing for unrelated state crimes, but he acknowledged that it would be up to the Bureau of Prisons to determine if defendant would receive credit for time served on those state charges. Id. at 11-12.

The sentencing hearing was continued to September 14, 2012. The Court overruled defendant's objections to the amount of restitution stated in the PSR, and the Court found that any objection to the probation officer's suggestion that defendant's criminal history calculation underrepresented the seriousness of her criminal history was moot. Dkt. # 45, at 4-6. The Court stated that letters had been received on behalf of defendant, and the Court had also considered "a psychological evaluation, a written report of interview, a juvenile treatment plan, a juvenile progress report, a letter to the court when the defendant was 18, a psychological evaluation when she was 11, and a letter from the teacher when she was age 11. Id. at 9. Wyatt sought a variance or departure for defendant based on her "learning disabilities and absolute lack of education," low IQ, and family history, and he asked the Court to impose a sentence of zero months or probation. Id. at 10-12. The Court found that defendant was not eligible for a departure based on her mental health or family history. Id. at 15. The Court also denied defendant's request for a variance on the same grounds due to the amount of the loss and defendant's substantial criminal history. Id. at 16-17. The Court imposed a sentence of imprisonment of 48 months and ordered that the sentence run concurrently with a sentence that defendant was serving for convictions in state court. Id. at 18. Defendant was also ordered to pay restitution in the amount of $209,755.43. Id.

Judgment and commitment (Dkt. # 38) was entered on September 18, 2012, and defendant did not file a direct appeal of her conviction. On September 6, 2013, defendant filed a motion to vacate, set aside, or correct sentence under § 2255 (Dkt. # 40). Defendant has also filed a motion for modification of sentence under § 3582(c) (Dkt. # 43). Defendant's § 2255 motion was filed within one year of the date on which her conviction became final, and the motion is timely under § 2255(f).

## II.

The government asks the Court to enforce the post-conviction waiver to which defendant agreed in her plea agreement, and it argues that all of the claims raised in defendant's § 2255 motion fall within in the scope of the post-conviction waiver. Defendant has not filed a response to the government's motion to dismiss.

The Tenth Circuit has established a three-part test to determine if an appellate and post-conviction waiver is enforceable:

> (1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived [her] appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice . . . .

United States v. Hahn, 359 F.3d 1315, 1325 (10th Cir. 2004). When determining the scope of an appellate or post-conviction waiver, a court must strictly construe the waiver in favor of the defendant and evaluate the scope of the waiver "in light of the defendant's reasonable understanding at the time of the guilty plea." United States v. Novosel, 481 F.3d 1288, 1291 n.1 (10th Cir. 2007). Challenges to the voluntariness of a guilty plea generally do not fall within the scope of a waiver. United States v. Weeks, 653 F.3d 1188, 1197 n.4 (10th Cir. 2011). Hahn requires the consideration of two factors when a court is considering whether a defendant knowingly and voluntarily agreed

to an appellate and post-conviction waiver.  First, the court "examine[s] whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily."  Hahn, 359 F.3d at 1325.  Second, the guilty plea must be the result of an adequate colloquy under Fed. R. Crim. P. 11.  Id.  A miscarriage of justice may result "[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful.  Id. at 1327 (quoting United States v. Elliot, 264 F.3d 1171, 1173 (10th Cir. 2001)).  A defendant may not avoid enforcement of a waiver under the "otherwise unlawful" exception based on alleged errors in the calculation of his sentence, because this exception is focused on the fairness of the proceedings, rather than result of the proceedings.  United States v. Smith, 500 F.3d 1206, 1213 (10th Cir. 2007).  A miscarriage of justice does not occur when a defendant receives a sentence higher than he expected if that sentence does not exceed the statutory maximum.  United States v. Green, 405 F.3d 1180, 1194 (10th Cir. 2005) (courts should consider the statutory maximum, not the defendant's anticipated sentence under the United States Sentencing Guidelines, to determine if a miscarriage of justice has occurred).  The defendant bears the burden to show that a miscarriage of justice has occurred.  United States v. Maldonado, 410 F.3d 1231, 1233-34 (10th Cir. 2005).

The first Hahn factor is whether defendant's claims fall within the scope of her post-conviction waiver.  In the plea agreement, defendant waived the "right to collaterally attack the conviction and sentence pursuant to 28 U.S.C. § 2255, except for claims based on ineffective assistance of counsel which challenge the validity of the guilty plea or this waiver . . . ."  Dkt. # 25, at 3.  She also agreed to "waive[] the right to have her sentence modified pursuant to 18 U.S.C. §

3582(c) . . . ." Id.  To the extent that defendant seeks a modification of her sentence under §

3582(c), it is apparent that she waived the right to file such a motion and defendant's motion (Dkt.

# 43) falls within the scope of her post-conviction waiver.  Defendant asserts four claims in her §

2255 motion: (1) ineffective assistance of counsel; (2) incorrect calculation of defendant's criminal

history in PSR; (3) court failed to consider defendant's mental health history at sentencing hearing;

(4) failure to give defendant credit for time served.  Claims two, three, and four clearly fall within

the scope of the post-conviction waiver, because defendant is challenging the validity of her

sentence rather than the validity of the guilty plea or post-conviction waiver.  As to her first claim,

defendant alleges no facts in support of her ineffective assistance of counsel claim and it is unclear

what aspect of defense counsel's performance she is challenging.  Construing her § 2255 motion

broadly, the only possible ineffective assistance of counsel she could be alleging would concern

defense counsel's performance leading up to and during the sentencing hearing, and this type of

claim would fall within the scope of the post-conviction waiver.  Thus, defendant's § 2255 claims

and her request for relief under § 3582(c) fall within the scope of the waiver.

The next Hahn factor is whether defendant knowingly and voluntarily waived her post-

conviction rights.  At the change of plea hearing, the Court conducted an extensive inquiry into

defendant's understanding of the terms of the appellate and post-conviction waiver, and the Court

read each part of the waiver to defendant.  Dkt. # 29, at 22-24.  Defendant acknowledged that she

understood what appellate and post-conviction rights she would be waiving by entering a guilty plea

pursuant to the plea agreement.  The Court also asked defendant if she had consulted with her

attorney about the appellate and post-conviction waiver and if she was "knowingly and voluntarily

waiving those rights as set forth in [her] written plea agreement," and defendant responded that her

waiver was knowing and voluntary.  Id. at 24.  There is nothing in the transcript of the change of plea hearing that would suggest that defendant was coerced into waiving her appellate and post-conviction rights or that her waiver was involuntary, and the Court finds that defendant knowingly and voluntarily waived her right to file a § 3582(c) motion or a § 2255 motion challenging anything other than the validity of the plea or the appellate and post-conviction waiver.

The final Hahn factor is whether enforcing the post-conviction waiver would result in a miscarriage of justice.  Construing defendant's motion broadly, her § 2255 claims primarily concern the length of her sentence and she could be arguing that it would be unfair to enforce the post-conviction waiver when she received a sentence of imprisonment longer than she expected.  Tenth Circuit precedent clearly establishes that a miscarriage of justice does not occur when a defendant receives a sentence below the statutory maximum, even if the defendant's advisory guideline range is greater than the defendant anticipated at the time of the guilty plea.  United States v. Viera, 674 F.3d 1214 (10th Cir. 2012); United States v. Porter, 405 F.3d 1134, 1144 (10th Cir. 2005); Hahn, 359 F.3d at 1329.  Defendant has not shown that a miscarriage of justice occurred, and her waiver of post-conviction rights is enforceable.

**IT IS THEREFORE ORDERED** that the government's Motion to Enforce Collateral Attack Waiver (Dkt. # 46) is **granted**.

**IT IS FURTHER ORDERED** that defendant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Dkt. # 40) and motion for relief under § 3582(c) (Dkt. # 43) are **dismissed** pursuant to defendant's appellate and post-conviction waiver.  A separate judgment of dismissal is entered herewith.

**IT IS FURTHER ORDERED** that the Government's Motion for Extension of Time to Respond to Defendant's § 2255 Motion (Dkt. # 47) is **moot**.

**DATED** this 21st day of October, 2013.

_Claire V Eagan_
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE